**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH J. GIACALONE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | Judge: |
| EXPERIAN PLC, LEXISNEXUS, | ) | |
| AMERICAN EXPRESS COMPANY, | ) | |
| BANK OF AMERICA CORP. and | ) | |
| JPMORGAN CHASE AND CO., | ) | |
| | ) | |
| Defendants. | ) | |

# COMPLAINT AT LAW

NOW COMES the Plaintiff, JOSEPH J. GIACALONE, JR., by and through his attorneys, Giacalone & Associates, LLC, complaining against the Defendants, EXPERIAN PLC (hereinafter referred to as "Experian"), LEXISNEXIS, (Experian and LEXISNEXUS collectively referred to herein as consumer reporting agencies, "CRAs",), AMERICAN EXPRESS COMPANY, (hereinafter referred to as "AMEX" or a "furnisher"), BANK OF AMERICA CORP., (hereinafter referred to as a "furnisher") and JP MORGAN CHASE AND CO., (hereinafter referred to as a "furnisher") as follows:

## I. PRELIMINARY STATEMENT

1. Plaintiff, Joseph J. Giacalone, Jr., a consumer and attorney, brings this action for damages based on violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), and other causes of action.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction of the FCRA claims in this action pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331. Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b).

## III. PARTIES

3. Plaintiff, Joseph J. Giacalone, Jr., is an individual residing in the City of Norridge, County of Cook, State of Illinois.

4. Defendant, Experian Plc, is a consumer credit reporting agency with its principal place of business in Dublin, Ireland, which commonly does business in Illinois and has an office located in the City of Schaumburg, County of Cook, State of Illinois.

5. Defendant LEXISNEXIS is a consumer reporting agency with its principal place of business located in Dayton, Ohio.

6. Defendant, American Express Company, is a corporation with its principal place of business located at World Financial Center, 200 Vesey Street, New York, NY 10285-3106.

7. Defendant, Bank of America Corp., is a corporation with its principal place of business located at Bank of America Corporate Center, Charlotte, NC 28255.

8. Defendant, JPMorgan Chase and Co., is a banking corporation organized and existing under the laws of the State of New York, with its principal place of business at 270 Park Avenue, New York, New York.

## IV. FACTUAL ALLEGATIONS

9. On or about September of 1994, Plaintiff applied for several student loans to finance his attendance at DePaul University College of Law. The creditor refused to loan him the money

because a parking ticket and an alleged default on his undergraduate loan from the University of Illinois at Champaign-Urbana appeared on his credit reports.

10. Plaintiff was greatly distressed by the inaccuracies on the credit reports and engaged in numerous conversations with the CRAs to delete the false information.

11. Since September of 1994, the CRAs, including Experian and LEXISNEXUS, have reported many misrepresentations on plaintiff's credit reports, causing him much frustration and distress.

12. Specifically, Defendant Experian's September 8, 1998 report contained the following errors:

a. that Plaintiff opened and maintained a Chase NA credit card opened in 1975; Plaintiff was four years old in 1975.

b. that plaintiff maintained a Citibank Visa account opened on September 1, 1990 with a high balance of $908;

c. that plaintiff maintained a First Card account opened on September 1, 1994 with a high balance of $200;

d. that plaintiff maintained a First Card credit card account opened on November 11, 1983 with a high balance of $4100;

e. that plaintiff maintained a JC Penny charge account opened on 3/28/84 with a high balance of $472.

13. Plaintiff attempted a number of times to get a person on the phone from Experian to discuss these misrepresentations from on or about August 30, 1998 through September 2, 1998 but was unable to speak to a person due to the confusing and frustrating computer phone system.

14. On September 3, 1998, plaintiff spoke with Lisa Haufe from Experian who was not very helpful in assisting plaintiff.

15. Said misrepresentations are examples of the unreasonable business procedures that the CRAs have engaged in, consistently and systematically, and with reckless disregard to sound business practices.

16. Plaintiff filed bankruptcy on April 7, 2005, invoking the Bankruptcy Court's automatic stay, thereby ordering creditors' collection methods to cease according to Section 362 of the Bankruptcy Code.

17. On April 11, 2005, the U.S. Bankruptcy Court sent a Notice of Chapter & Bankruptcy case, Meeting of Creditors and Deadline, to the Defendant banks, as evidenced by the Bankruptcy Clerk's Certificate of Mailing. The bankruptcy case was discharged July 26, 2005.

18. On or about September 1, 2007, plaintiff had a conversation with Ms. Ford, an employee of Experian. Plaintiff had sent a letter to Experian on August 24, 2007, informing them of false reporting of collection accounts by Resurrection Medical Center and their collection agency, Illinois Collection Service, Inc.. She was unable to access the letter in the computer system.

19. According to the conversation, Ms. Ford agreed to send plaintiff a full credit report but she failed to do so.

20. Plaintiff then said to Ms. Ford that Experian's inability to locate and disclose information regarding these collection accounts was very distressing.

21. Transunion reported Illinois Collection Service's collection account from on or about July 8, 2005, up to the date it drafted a personal credit account, on March 17, 2007, despite the fact that a reading of the bankruptcy record would have revealed that the debt had been discharged and subsequent reporting of delinquencies was incorrect.

## V. RELEVANT STATUTES

22. Section 1681n of the FCRA provides:

§1681n. Civil liability for willful noncompliance (a) In general. Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of-
(1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
(2) such amount of punitive damages as the court may allow; and
(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. . . .

23. Section 1681o of the FCRA provides:

§1681o. Civil liability for negligent noncompliance
(a) In general. Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of--
(1) any actual damages sustained by the consumer as a result of the failure;
(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

## VI. CLAIMS

## COUNT I -- FAIR CREDIT REPORTING ACT

24. Plaintiff incorporates the foregoing paragraphs by reference as if contained in this Count I herein.

25. At all times relevant herein, plaintiff was a “consumer”, Experian and LEXISNEXUS were “consumer reporting agencies”, and AMEX, JPMorgan Chase and Co., and Bank of America Corporation were “furnishers” as defined in the FCRA.

26. Defendants Experian’s and LEXISNEXUS’ violations of the FCRA include, but are not limited to:

(a) Failure to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates in violation of 15 U.S.C. §1681e(b);

(b) willful noncompliance with the FCRA's; and

(c) negligent noncompliance with the FCRA.

27. The CRAs were negligent in failing to follow reasonable procedures to assure the accuracy of plaintiff's credit reports.

28. Upon information and belief, Experian relies on LEXISNEXUS for some of the information it reports on consumers' credit reports.

29. Experian reported inaccurate information on plaintiff's credit reports in the years 2003, 2007, 2008, and 2011, amongst other years.

30. The plaintiff was injured financially by a lower credit score.

31. The CRA's negligence proximately caused the plaintiff's injuries.

32. A careful review of the public bankruptcy record would have revealed several creditors, including AMEX, Bank of America and JPMorgan Chase and Co., were clearly listed in the appropriate schedule in the bankruptcy application, filed with the Court in 2005.

33. While a bankruptcy initially harms a consumer credit score, as a static event, a consumer's credit score improves each day that passes post-discharge and a CRA's failure to properly report the discharge hampers that improvement.

34. That a debt is "charged off" or "written off" represents a delinquency that a debt was unpaid and uncollected, whereby the furnisher wrote it off in their accountings.

35. Experian failed to correct many inaccuracies on plaintiff's credit reports despite many telephone conversations and letters.

36. The CRAs should have been able to institute procedures to update the accounts discharged in bankruptcy even without an update from the creditors.

37. Experian failed to report the debts with a $0 balance, as required under law.

38. A major class action settlement, *White v. Experian Info. Solutions, Inc.*, Case No. CV 05-7821 (C.D. Cal. Aug. 19, 2008)(lead case) required CRAs to treat all pre-bankruptcy debts as discharged, unless furnishers provide information otherwise. CRAs are to no longer to report "charged off" or placed in collection debts that have in fact been discharged in bankruptcy. Despite *White* and much other litigation, the CRAs continued to tragically report harmful and inaccurate information discharged in Bankruptcy.

39. The CRAs failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the plaintiff in violation of 15 U.S.C. §1681e(b) in that they were aware that plaintiff's bankruptcy case was discharged on July 26, 2005. The CRAs computer system failed to identify and decipher information from the public record thus resulting in many inaccuracies.

40. In regards to American Express Account Number 349991382725***, Experian:

a. did not refer to this account in its September 12, 2007 report;

b. reported: "Status: Debt included in Bankruptcy/Account charged off" in its April 14, 2008 report;

c. in its February 21, 2011 report, reported in the creditors statement: “Creditor Statement: Account closed at credit grantor’s request” and “Account History: Charge off as of April 2005”, gross errors because the debt was discharged in bankruptcy.

41. Experian incorrectly reported AMEX Account Number 27003715900… in the following manner:

a. “Status: Discharged through Bankruptcy Chapter 7” in its September 12, 2007 report;

b. That the account was discharged through bankruptcy Chapter 7 on the April 14, 2008 report;

c. “Status: Account charged off. $9,413 written off. $9,413 past due as of Aug 2007”, in its February 21, 2011 report, reckless reporting of the status of the account;

d. as: “Recent Balance $9,413 as of 8/2007”, on the 2011 report. In actuality, there was no balance on 8/2007 because the debt had been discharged two years previously.

e. as “Account History Charge off as of May 2007 to Aug 2007” also on the 2011 report.

42. Experian reported a Bank of America Account with Account Number 488893099143 as:

a. “Debt included in Bankruptcy/Account charged off.” in its credit report dated April 14, 2008;

b. "Status: Account charged off. $3,369 written off," on the 2011 report. The accurate way to describe the disposition of the account would have been that it was "including in bankruptcy".

i. This account further states: "Account history: Charge off as of April 2008 . . . Jun 2005 past due as of 2005", additional false representations of plaintiff's credit history.

43. Experian reported a Bank of America credit card account with Account Number 54035299*** as follows:

a. "Status: Debt included in Bankruptcy/never late." in its 2007 and 2008 reports.

b. "Balance History Jun 2005 $0 Jun 2005 $10,791 May 2005 $10,530 Apr 10,300 Mar 9,582" in the March 17, 2007, a reporting of balances after the imposition of the Bankruptcy court stay.

c. in the February 2011 report as "Account charged off/Never late. $10,791 written off." To report it was "charged off" or "written off" implies a failure to make payments by which Bank of America decided to "charge off" and "write off" the unpaid and uncollected debt.

d. "Account History: Charge off as of Apr 2008, Sep 2006", additional harmful reporting viewed by financial institutions considering to extend credit to plaintiff.

44. Experian represented a Bank of America credit card account with Account Number 7497499975… as follows:

a. Discharged in its 2007 and 2008 reports.

b. in the February 2011 report as "Status: Account charged off/never late. $15,780 written off." Also, the Account History states a "Charge Off as of Apr 2008, Sep 2006".

c. "Balance History Jun 2005 May 2005 $15,537 Apr $15,298 Mar $14,596", in the March 17, 2007 report, a reporting of balances after the imposition of the Bankruptcy court stay.

45. Experian reported plaintiff's Chase Bank USA credit card account with Account Number 426685102*** as follows:

a. That the debt was discharged in bankruptcy in its 2007 and 2008 reports;

b. in the March 17, 2007 report as a balance of $2,041 from August 2005 to November 2005, up to four months after the discharge of the debt;

c. "Status: Transferred, closed. $2,041 written off" and "Account History: Charge Off as of Jul 2006, Dec 2005, Nov 2005, Oct 2005, Sep 2005, Aug 2005, July 2005 30 days past due as of June 2005", in the February 2011 report.

i. Plaintiff was not "past due" as of June 2005 because the bankruptcy case was filed on April 2005 and a stay was issued until the debt was discharged in July.

ii. Plaintiff was never past due on the account. Defendant and furnisher Chase did not report this alleged past due on account on either of the two the other credit bureau reports from TransUnion and Equifax.

46. Experian reported a HSBC BANK credit card account with Account Number: 549944100*** as:

a. discharged in bankruptcy in the 2007 and 2008 reports;

b. "Status: Transferred, closed. $2,106 written off" on its February 21, 2011, report, another misrepresentation contributing to a lower FICO credit score.

47. Experian reported a Carson Pirie Scott/HSBC Account Number 115458…. Account as "Status: Account charged off. $659 written off." Also in regards to the Carson's account, the Account History states a "Charge Off as of Jul 2007, Mar 2007. Feb 2007 30 days past due as of May 2005."

i. The furnishers internal accounting records of what they did with the debt should not be reported on plaintiff's credit report when the fact remains they are false." The account was never "past due".

ii. Reports of "charge offs" 2 years after the discharge are very harmful representations.

48. On its February 21, 2011 report, Experian reported American Express Account Number: 8918539719*** as: "Account closed at consumers request", while in actuality, the account was discharged in bankruptcy.

49. Experian reported American Express Account Number: 3499912810418*** on its 2008 report, correctly as referencing the bankruptcy but reports on the February 2011 report, "Creditor's Statement: Account closed at credit grantor's request . . . Charge off as of Apr[sic] 2005".

50. The CRAs failed to follow reasonable procedures and acted negligently and unreasonably in the following ways:

a. falsely reporting of a company "charging off" or "writing off" account balances that were discharged in bankruptcy;

b. failing to have verification procedures to provide clarification;

c. failing to have cross-referencing safeguards;

d. failing to accurately check the public record and report factual information;

e. repeatedly reporting inaccurate credit information and egregious errors, which by themselves, in the aggregate, evidence unreasonable procedures as viewed by a reasonable person;

f. allowing many inconsistencies between reports;

g. reporting incomplete information in failing to state that accounts were paid and that plaintiff was never late on payments;

h. failing to clearly and accurately provide all of the information to plaintiff in their files in his request for a "full file disclosure";

i. relying on Resurrection Medical Center's and Illinois Collection Service, Inc's information that the plaintiff was delinquent on payments, when it knew or should have known that these creditors were unreliable sources as evidenced by many consumer complaints on their records;

j. not deleting negative information, including balances over the credit limit, which have been on the reports for over seven (7) years;

k. failing to train and hire competent employees;

l. failing to follow many Federal Trade Commission regulations; and

m. failing to use a good computer system.

51. It would not be unduly burdensome and unreasonable for the CRAs to have extremely sophisticated computer programs and algorisms engineered by competent employees to report accurate information.

52. Thousands of complaints and lawsuits against the CRAs and furnishers reflect similar bad reporting, as described herein, which demonstrate a real need for reform of CRA procedures.

53. CRAs have very poor management practices in collecting, matching, comparing, retaining, correcting and reporting data.

54. The cost of verifying the accuracy of the source is less than the harm caused to the consumer.

55. An industry expert, Tom Davorin, a former employee of TransUnion, believes the CRAs and furnishers operate as very run poorly companies, with monopoly power, which often harms consumers.

56. The following are actual and special damages, identified with particularity, showing special harm, which are supported by extrinsic facts:

a. Monetary loss caused by denials and difficulties in obtaining credit; subsequent vendors and lenders turned plaintiff down for credit because of the defamatory statements.

b. Monetary loss caused by loss of business opportunities. The prevention of possible extensions of credit is a pecuniary loss, which proves special damages. Upon information and belief, AMEX refused to extend credit to plaintiff based partly on the false reporting.

c. Monetary loss caused by bad credit terms and higher interest rates on issued credit cards. The following lenders offered bad terms and higher interest rates: Discover Financial and JP Morgan Chase and Co. on Chase's *Ink* credit card;

d. Out-of pocket damages such as phone charges, fax charges, supplies and paper, court filing costs, travel expenses to the post office and other locales, certified and regular mail charges in fact-finding, investigation, and trying to clear up plaintiff's name in corresponding with the Defendants, furnishers, creditors, and numerous financial institutions;

e. Opportunity costs and distraction from work of an attorney billing out at a reasonable attorney rate per hour;

f. injuries to plaintiff's psyche and emotional distress.

WHEREFORE, Plaintiff Joseph J. Giacalone, Jr. requests judgment be entered in his favor and against the CRAs for:

a. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) and § 1681o(a)(1);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Costs, litigation expenses, and Attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2); and

d. Such other relief as the Court may determine to be proper.

**COUNT II: DEFAMATION OF CHARACTER**

57. Plaintiff re-alleges paragraphs 1- 56 above into this Count II.

58. The Defendants maliciously, intentionally, and wrongfully contrived to destroy the Plaintiff's good name, reputation, and credit by causing false information to appear on

Plaintiff's credit reports when the Defendants knew or should have known that the false accounts were: a) discharged by the bankruptcy court; b) paid; c) current; or d) otherwise not delinquent.

59. The Defendants made defamatory statements, as outlined herein, which appeared on Plaintiff's credit reports and which recklessly have disregarded plaintiff's right to have a credit report accurately reflect his financial history.

60. Defamatory statements consisted of numerous references of the plaintiff's accounts as "written off" or "charged off" when in fact the accounts were discharged in the bankruptcy court.

61. A defamatory statement consisted of reports of accounts being "past due" as reported after the discharge of the bankruptcy case.

62. The Defendants knew or should have known that said statements were false.

63. The reporting of numerous fraudulent accounts is malicious and willful and a pattern of bad corporate behavior and not isolated instances of human error.

64. Defendants should have been aware that much of their reporting was false.

65. Said defamatory and false statements were published to several third parties including but not limited to a number of financial institutions who viewed Plaintiff's credit reports in preparation for their decisions to extend credit.

66. The bad actions on the part of the Defendants was done with malice that defamed Plaintiff's character.

67. The defamatory statements proximately caused the following damages: loss of credit, refusal to extend credit to the plaintiff, an impaired good name and reputation, injuries to plaintiff's psyche, and emotional distress.

68. Punitive damages are warranted in this case. Defendant's acts were willful, wanton, and intentional, done in conscious disregard and with reckless indifference to the rights of plaintiff.

WHEREFORE, Plaintiff, Joseph J. Giacalone, Jr., requests judgment be entered in his favor and against Defendants for:

a. Actual damages;

b. Punitive damages;

c. Costs, litigation expenses, and attorneys' fees; and

d. Such other relief as the Court may determine to be just and proper.

**COUNT III: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

69. Plaintiff re-alleges paragraphs 1- 68 above into this Count III.

70. Plaintiff had a reasonable expectancy of entering into valid business relationships with many financial institutions that extend credit to consumers.

71. The Defendants had knowledge of the expectancy of future business because they are familiar with business practices whereby financial institutions review credit reports before extending credit to customers. Further, Defendants understood the effect of bad financial consequences, as a result of negative information on a credit report.

72. Defendants knew that "charged off" and "written off" entries as to the status of an account interfere with one's ability to obtain credit.

73. There was an intentional and unjustified interference by the Defendants that induced and caused a breach or termination of the expectancy.

74. Defendants' actions were intentional and unjustified interference with Plaintiff's financial affairs.

75. The Defendants acted with malice, willful intent and with the purpose of injuring plaintiff's expectancies, as evidenced by a disturbing pattern of treating customers such as the Plaintiff very poorly.

76. A clear inference of malice from the numerous instances of the transmission of false information and false reporting can be drawn from the facts.

77. Defendants' conduct proximately caused significant damages, as enumerated herein.

WHEREFORE, Plaintiff, Joseph J. Giacalone, Jr., requests judgment be entered in his favor and against Defendants for:

a. Actual damages to be determined at trial;

b. Punitive damages of $500,000.00;

c. Costs, litigation expenses, and attorneys' fees; and

d. Such other relief as the Court may determine to be proper.

**COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

78. This Count incorporates paragraphs 1-77 above.

79. Defendants intentionally engaged in outrageous and extreme behavior in reporting false information with reckless disregard for the law.

80. The outrageous and extreme behavior, extended over many years, consisted of the following:

a. Failure to answer phone calls;

b. Causing plaintiff much frustration in responding to the reporting of inaccurate information;

c. Allowing untrained, incompetent employees to field plaintiff's phone calls;

d. Exerting uneven leverage, resources, and money in isolating themselves in a corporate hierarchy from efforts by the plaintiff to clear up his credit issues;

e. Unfairly treating the plaintiff, a sole individual with fewer resources than billion dollar corporations, in an outrageous matter. The disparity in power unfairly caused plaintiff much distress over the years.

f. Allowing grossly inaccurate items to appear on plaintiff's credit reports when little effort could have corrected the misrepresentations.

81. In the totality of the circumstances, the Defendants have acted in an outrageous manner. Such egregious corporate behavior is illegal, unethical and actionable. Corporations should act responsible, not reckless.

82. There is a causal connection between Defendants' wrongful conduct and Plaintiff's emotional distress.

83. Plaintiff suffered and continues to suffer severe emotional distress in the forms of: anxiety; mania at times; racing thoughts, negative thoughts, worrying, and headaches.

84. Dr. Stephen Romm has concluded that defendant's bad behavior has contributed to plaintiff's severe emotional distress.

85. Dr. Alan Goldberg has also concluded that defendants bad behavior has caused plaintiff severe emotional distress. Dr. Goldberg charged $165 per hour and about a total of one session was used to discuss/treat the psychological stress.

86. Punitive damages are justified as pled above.

WHEREFORE, Plaintiff, Joseph J. Giacalone, Jr. prays for the following relief:

a. Actual damages in the amount of $1,000.00;

b. Consequential damages in the amount of $5,000.00;

c. Punitive damages in the amount of $500,000.00;

d. For costs of suit and attorneys' fees incurred in litigating this matter; and

e. For such further relief as this court deems just and equitable.

**COUNT V: FALSE LIGHT**

87. Count V herein incorporates paragraphs 1- 86 above.

88. Defendants gave publicity to banks and other financial institutions several negative and inaccurate statements about Plaintiff's credit worthiness, which placed plaintiff in a false light.

89. The false light caused the plaintiff to be viewed in a manner that was highly offensive to a reasonable person.

90. Specifically, the inaccurate and false information led to the Plaintiff being rejected numerous times for extensions of credit and to the awarding of higher interests rates and substandard terms on his credit.

91. The Defendants acted and continue to act with reckless disregard of the falsity of the information on plaintiff's credit history.

92. Defendants made plaintiff appear in an objectionable way to prospective financial institutions.

93. Defendants' statements were false and involved a major misrepresentations of plaintiff's credit history.

94. The statements made were in reckless disregard to the truth that plaintiff had a higher credit score.

WHEREFORE, Plaintiff Joseph J. Giacalone, Jr. requests judgment be entered in his favor and against Defendants for:

a. Actual damages;

b. Punitive damages;

c. Costs, litigation expenses, and Attorneys' fees; and

d. Such other relief as the Court may determine to be proper.

**JURY DEMAND**

Plaintiff, Joseph J. Giacalone, Jr. requests a trial by jury.

Respectfully submitted,

By: s/Joseph J. Giacalone, Jr.

Joseph J. Giacalone, Jr., Esq.

Joseph J. Giacalone, J
Giacalone & Associates, LLC
4304 N. Osceola Ave., Suite 100
Norridge, IL 60706
Phone: 847-707-9000
ARDC 6242970